## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

### NO. 5:09-CR-216-FL

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| HYSEN SHERIFI; | ) |
| ANES SUBASIC; | ) |
| DYLAN BOYD; | ) |
| MOHAMMAD OMAR ALY HASSAN; | ) |
| and | ) |
| ZIYAD YAGHI, | ) |
| | ) |
| Defendants. | ) |

ORDER

This matter is before the court on the government's motion for reconsideration and notice regarding accommodation as to transcript (DE # 1327). On August 15, 2011, the above-referenced defendants were arraigned. Conference also was undertaken and the matter of transcripts anticipated to be used at trial in aid to the jury's understanding of certain audio was entertained. Conference on this issue continued August 16, 2011, on which date the court convened the parties primarily for the purpose of Daubert hearing, related to the proposed testimony of the government's witness, Evan Kohlmann. Issues concerning Mr. Kohlmann's trial testimony remain under consideration by the court. This order focuses upon the narrow issue of transcripts in this case. For the reasons set forth below, the court denies the government's motion as moot and provides direction regarding the issue of transcripts.

## BACKGROUND

At hearing and conference July 29, 2011, at New Bern, among other things, the court previewed technology enhancements with the parties suggested to be utilized at trial, to include use of an amplifier and assisted listening headset devices. It was aware of difficulty in understanding certain audio, also as revealed at a prior hearing. Discussion was undertaken then concerning transcripts. The court raised issues it perceived then, in advance of trial, of or relating to the introduction and use of these aids. Discussions have continued.

Something around nine hundred (900) hours of audio recordings were made by the government in its investigation. The government has disclosed that it intends to present about twenty (20) hours of audio in its case-in-chief. Complaints about audio quality sounded early in the case. The magistrate judge facilitated a comprehensive, lengthy, and involved process in which all parties participated, in furtherance of the preparation of transcripts of designated recordings.

The process permitted, among other things, defendants to note objections, if any, to transcription quality. Manner of presentation of any variant or counter transcript(s) by a defendant at trial was not explicitly considered. Defendant Hysen Sherifi offers a summary of the process drawn down on, necessarily involving a collaboration between the sides, in his response to the government's notice. (DE # 1367). It appears that many transcription issues among defendants, except Anes Subasic, whose trial separately will proceed, were ironed out during the exchanges. Still, some persist.

Defendant Dylan Boyd memorialized certain transcript issues in a filing made August 12, 2011, in advance of another pre-trial hearing and conference before the undersigned. Defendant suggested that the court, among other things, should discount any transcript if the audio is

2

unintelligible. (DE # 1309). Where there is basis for competing transcripts, defendant seeks to introduce a variant or counter one, also as urged at later hearing and conference. On August 16, 2011, counsel for defendant Boyd stated that he personally has prepared counter transcripts, where that party asserts certain audio incorrectly has been interpreted by the government. Defendant Boyd very much wants opportunity to show variant or counter transcripts to the jury. This defendant also made reference to the court's earlier statement that it is inclined to permit the transcripts of admitted recordings to be sent to the jury room. The court now has cause to revisit all of this.

Mindful that the issue of use of transcripts is one within the trial court's discretion, reference by this defendant is made to well-established law that transcripts are merely an aid to help understand the audio recordings in this case, and that the jury should receive cautionary instructions from the court. See United States v. Capers, 61 F.3d 1100, 1107 (4th Cir. 1995). No party appears to disagree with these precepts.

Defendant Sherifi argues in his filing that the processes put in play by the court through the magistrate judge's oversight, described as a "designate-object-resolve" scheme (which undeniably brought a critically needed methodology to the production of transcripts in this case), should not now be used by the government to prohibit their competing transcripts. Going one step further, because there is no "final" step to the "designate-object-resolve" scheme, transcripts, he suggests, should not now be used at all.

His argument takes an even more scattered approach, as this defendant goes on, through counsel, to say he "objects solely on the unique grounds presented by this case – that the resources used by the Government to prepare transcripts far outpaced those of the defense, and that in instances of poorer-quality recordings, the use of a transcript elevates what would otherwise be useless

3

evidence into potentially inculpatory evidence solely because of the existence of Government transcripts." (DE # 1367 p. 4). Defendant Ziyad Yaghi joins in these arguments. (DE # 1377).

## COURT'S DISCUSSION

At hearing and conference in August the court variously stated1) that perhaps given issues now appearing, no transcripts should be used at trial; 2) that the government should consider more particularly defendants' view and endeavor to reach some agreement as to variant or counter transcript presentation; and 3) that if a defendant understands an audio recording to be so poor in quality as to be unintelligible, it should raise the issue particularly. It gave the parties fourteen (14) days to develop their responses. This order reflects decision that transcripts in certain instances may be presented, recognition of the government's accommodation to defendants, and awareness that there still may be need for the court to preview certain audio recordings.

A.     Transcripts Generally

Where audio now will be enhanced in the courtroom, through use of an amplifier and headset devices, and the engine that drove collaborative processes aimed at producing trial ready transcripts appeared sputtering, the court opined that perhaps no transcripts should be allowed at trial. This is an arbitrary result, I recognize. The court must make certain that there is basis for a transcript, i.e. that audio is susceptible to a reasonably accurate transcription. If there are no transcripts, there can be no issue. This view does discount a significant amount of work undertaken and it does not recognize, as has been clarified, how many transcripts are not disputed.   The court declines to endorse on the record before it what defendant Sherifi urges, and defendant Yaghi seconds, that some missing step from the process engaged in by the parties over an extensive period should form basis for a decision to exclude all transcripts.

4

Transcripts will help the jury's understanding of the evidence, where some twenty (20) hours of audio are sought to be introduced by the government, at least some of which is acknowledged as difficult to understand due to technological, environmental, and/or language issues. Where there are no counter or variant transcripts, in the court's discretion, these transcripts may be offered by the government as jury aids, subject to the rules. As they are allowed, the court regularly will instruct the jury that the evidence is the audio recording themselves.

B. Variant or Counter Transcripts

Where audio otherwise is susceptible to the transcription process, but there are occasional word differences propelling variant or counter transcripts, the government's attorney disclaimed last month interest in permitting these to be presented as an aid by any defendant during its case-in-chief. Defendant Boyd promoted need to do this and efficiencies which would accrue in the presentation of evidence to the jury. The government reiterated at hearing and conference defendants' entitlement to cross-examination about its transcripts and right to present a variant transcript in the defendants' case, assuming the authentication threshold could be crossed.

Issue then devolved quickly into whether and how any variant transcript individually prepared by an attorney could be recognized in the courtroom as an aid, and what process of authentication might be followed. The court recollects a cry of "foul" from defendants, when the spotlight shined on authentication. It was commented that at least with some of the government's transcripts it had been shown to defendants in their review that as many as five or six people working for the government had contributed to the making of a single transcript. The government has now offered an accommodation, generally favorably received, which promotes a method for presentation of variant or counter transcripts, which will be followed at trial.

5

C.    Where the Audio Clip Is Unintelligible

The court's attention turns now to clips where the audio in some part is essentially unintelligible. In these instances, the question is not in the first instance one about address of competing transcripts. Rather, it is whether or not the recording itself can come into evidence.

To answer that question, should it arise, the court must listen to the audio clip so as to have basis for informed decision as to whether the recording on the whole is so poor as to be untrustworthy. A specific showing must be made. If there is a specific recording(s) which a defendant would seek the court to preclude being introduced at trial, let the defendant signal this now in a pretrial motion. At trial, the issue should be raised by a defendant outside the presence of the jury. The court then will listen to the audio clip and make its decision.

If the recording is trustworthy enough to be probative and there is not substantial risk that its admission will unfairly prejudice the jury, then the court will address any transcript issue arising. If a defendant wants to argue that unique considerations compel that no transcript be offered to aid the jury in its understanding of that particular recording, he may so do. Otherwise, the variant or counter transcript process proposed by the government will be adhered to.

The parties are far better positioned at this stage to know whether any recordings on which the government may rely are inaudible. The government points to only what it calls an "innocuous portion" that is disputed by defendants (excluding defendant Anes Subasic). The court indicated willingness to preview audio recordings in advance of trial in furtherance of any determination. While none of the defendants has suggested that any particular audio clip is indecipherable, the court opens up the door again for such a showing(s).

6

## CONCLUSION

For the reasons set forth above, transcripts will help the jury and where there are no counter or variant transcripts, in the court's discretion, these transcripts may be offered by the government as jury aids, subject to the rules, and as they are allowed, the court regularly will instruct the jury that the evidence is the audio recording themselves. Where audio quality is susceptible to the transcription process, but there are different understandings of spoken word(s), resulting in variant or counter transcripts, the government has now offered an accommodation, which the court finds reasonable. Hearing no particular complaint from any defendant as to this process, the same will be adhered to at trial.[1] Where an audio clip is deemed unintelligible, the matter of whether any transcript is appropriate is secondary to the question whether, under the rules, the particular audio evidence is admissible. This question, to date, has not been raised by any defendant with respect to any specific audio evidence. For all of these reasons, the government's motion for reconsideration and notice regarding accommodation as to transcript (DE # 1327) is DENIED as moot.

SO ORDERED, this the __6__ day of September, 2011.

_____
LOUISE W. FLANAGAN
Chief United States District Judge

---

[1] Any defendant who would say he should not be made at trial to agree to this method of presentation of his variant or counter transcript(s), shall note now on the record his objection to the accommodation and otherwise, not later than September 12, 2011. And in that event, the court signals now that what the government would say are the more normal processes, including admission of authenticated transcripts, will be followed at trial.

7