IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CR-216-FL-2

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| HYSEN SHERIFI, | ) | |
| | ) | |
| Defendant. | ) | |

This case came before the court for sentencing January 13, 2012, upon return of guilty verdict on all counts lodged against defendant Hysen Sherifi: 1) conspiracy to provide material support to terrorists in violation of 18 U.S.C. § 2339A; 2) conspiracy to murder, kidnap, maim and injure persons in a foreign country in violation of 18 U.S.C. § 956(a); 4) possession of firearms in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c); 8) possession of firearms in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c); and 11) conspiracy to kill a federal officer or employee in violation of 18 U.S.C. § 1117. Lengthy report by the United States Probation Officer ("officer") memorialized defendant's sentencing objections.[1]

The court commenced at hearing to determine the advice of the United States Sentencing Guidelines ("Guidelines" or "USSG"), a tool implemented by Congress to suggest an appropriate sentence based primarily on the severity of the defendant's criminal conduct and the extent of his previous criminal history. The court may accept any undisputed portion of the presentence report

---

[1] Defendant filed sentencing memoranda (DE # 1625), which included motion for downward variance, focused primarily on 18 U.S.C. § 3553 sentencing factors.

as a finding of fact in establishing the Guidelines range, must decide any objection bearing on the advisory Guidelines, and has substantial discretion to impose a sentence above or below the advisory Guidelines range if such a sentence is necessary to accomplish the goals of sentencing.

Defendant promoted factual objections including as to the officer's recitation of the purpose of defendant's travel overseas, defendant's efforts to mislead a Raleigh area philanthropist to secure funds for the commission of jihad, statement of his planning with defendant Daniel Boyd for attack on United States Marine Corps Base at Quantico, Virginia, and the officer's characterization of the term "violent jihad." Without fettering defendant's ability to argue at hearing favorable inferences from the facts established, the court found the officer's statements supported by a preponderance of the evidence. These facts were contested at trial, and the jury verdict of guilty indicates that the jury did not accept defendant's version of the events.[2]

Legal objections to enhancements under United States Sentencing Guidelines ("USSG") § 3A1.1(a) for intentionally selecting any victim or property because of the actual or perceived race, color, religion, national origin, or ethnicity;[3] § 3A1.2 for targeting official victims;[4] and § 3A1.4,

---

[2] Where defendant urges that the entire prosecution violates the First Amendment to the United States Constitution, and also suggests that he has been convicted of having the goal to commit "violent jihad," though "violent jihad" is not a criminal offense, the court notes that multiple motions lodged by this and other defendants pertaining both to the First Amendment as well as the term "violent jihad," previously were considered and denied.

[3] USSG § 3A1.1(a) provides that if the court at sentencing determines beyond a reasonable doubt that the defendant intentionally selected any victim or any property as the object of the offense of conviction "because of the actual or perceived race, color, religion, national origin, ethnicity, gender, gender identity, disability, or sexual orientation of any person," the offense level should be increased by three. The advisory notes to the guideline reference that it is meant to apply to hate crimes. There is no Fourth Circuit case on point able to be located. The United States Probation Office cites In re Terrorist Bombings of U.S. Embassies in E. Af., 552 F.3d 93 (2d Cir. 2008) for application of the enhancement. In that case, a jury convicted the defendants of many crimes, including conspiracy to murder internationally protected persons, United States officers, and employees engaging in official duties, conspiracy to destroy buildings and property of the United States, and conspiracy to use weapons of mass destruction against United States nationals and property overseas. The Second Circuit found the enhancement properly applied, noting "[t]he hate crime enhancement applies if the defendant 'intentionally selected any victim' on the basis of one of the factors listed [in § 3A1.1(a)] and, because there can be no 'good reasons' for doing so, the underlying motivation of [defendants] is simply beside the point." 552 F.3d at 93. A court in the Southern District of New York also applied the enhancement. See United States v. Cromitie, 2011 WL 2693293, *7 (S.D.N.Y. 2011) (applying enhancement after jury convicted defendants of conspiring to bomb synagogue). Both In re Terrorist Bombings and Cromitie have very different facts from those at issue in this case, however. Nonetheless, the application is properly applied where this defendant and the
(continued...)

2

the terrorism enhancement[5] (a significant driver of the Guidelines' advice), vigorously were argued.

---

[3](...continued)
other defendants intentionally selected victims beyond a reasonable doubt based on religion, national origin, and/or ethnicity. Defendants, including this one, conspired to commit terrorist acts aimed at the "kuffar," or non-Muslims, and focused substantial effort in planning. This defendant solicited funds for the purchase of property to be used in the commission of offenses against targeted persons overseas, aided and supported the efforts of others in this regard, including Bajram Asllani, and engaged in firearms training simulating battle conditions. While there were no actual victims, the radical ideology espoused by defendant was grounded in a twisted version of Islam which defendant and others espoused, requiring among other things the killing of non-adherents and Americans, including those on Muslim lands and in this country, at Quantico, Virginia.

[4] Defendant notes that at trial, the government offered no evidence that he conspired to injure a government officer or employee. USSG § 3A1.2 provides that a three level enhancement should be applied if the victim was a government officer or employee and the offense of conviction was motivated by such status. The officer's response, as presented in addendum, states that the enhancement is not only applied because of the Quantico, Virginia conspiracy, where the court notes evidence was presented that specific categories of members of the military and their families were targeted, but because defendant also conspired to kill United States military personnel serving abroad. Specific reference was made to the testimony of Melvin Weeks. As to this defendant only, the record reflects the court determined the enhancement properly applied.

[5] USSG § 3A1.4 provides that "if the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32." § 3A1.4(a). Subsection (b) provides that in every such case the defendant's criminal history shall be a category VI. The application notes to § 3A1.4 reference the definition of "federal crime of terrorism" as provided in 18 U.S.C. § 2332b(g)(5). That statute defines "federal crime of terrorism" as an offense that

> (A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and
>
> (B) is a violation of [providing list of statutes, including § 956(a) (conspiracy to murder, kidnap, or maim persons abroad) and § 2339A (providing material support to terrorists)].

§ 2332b(g)(5)(B)(I).

The case of United States v. Chandia, 395 F. App'x 53 (4th Cir. 2010) (per curiam) was thoughtfully argued by both sides. Chandia is instructive for its emphasis on the necessity for specific findings to be made when this enhancement is considered. It is noted that other courts have declined to apply it. See United States v. Khan, 461 F.3d 477 (4th Cir. 2006) (revealing that the "district court chose to sentence [one defendant] well below the range recommended by the sentencing guidelines" but including no discussion at all about the terrorism enhancement or its application); United States v. Stewart, 590 F.3d 93, 138 (2d Cir. 2009) (quoting Chandia and noting that failure to apply the enhancement was not error when the government showed no facts supporting the specific intent necessary for the enhancement). Unlike in Chandia, specific facts are urged by the United States Probation Office to be considered in this case and related ones upon which the probation officer contends the enhancement is warranted. Concerning this defendant, reference is made to the fact the defendant built a relationship with co-defendants including Daniel Boyd, his sons, and Anes Subasic based on their views of Islam, including the goal of waging violent jihad in various parts of the world. The group's goal was to kill non-Muslims, specifically those they believed were living unjustly in Muslim lands. In 2008, the court found that defendant traveled to Kosovo to engage in jihad, and while in Kosovo made contact with like-minded individuals including Asllani. He returned to this country in 2009, with the intent to solicit funds and personnel to support the mujahideen. Sherifi received $15,000 to support the mujahideen (which fact he unsuccessfully objected to). He participated in the firearms training in Caswell county, and had frequent contact with Daniel Boyd and
(continued...)

3

Reference expressly is made to the record of hearing, with regard to findings which this court determined and that support each of these enhancements. Over the objections of defendant, the record shows the court found that the officer correctly concluded that the advice of the Guidelines as to each count was: 1) not more than 15 years; 2) life; 4) 60 months consecutive to any other sentence, 8) 300 months consecutive to any other sentence; and 11) life.[6]

The court allowed the parties opportunity to argue for whatever sentence they deemed appropriate. As noted, the government advocated for a sentence of life in prison. Also as noted on the record, defendant's argument recognized the lengthy mandatory minimum sentences which must be imposed in the case, and included request for leniency, in fashioning sentences concerning counts 1, 2, and 11.

In mitigation, reference was made to defendant's difficult upbringing in Kosovo during wartime, his refugee status, work ethic, and the impact on him of family tension and perceived disenfranchisement in American society. Counsel ably argued on defendant's behalf at hearing and in his pre-hearing written submission. Letters received by the court in support of defendant, including from members of defendant's family, also were reviewed, and reference to the same was made on the record.

The court addressed the defendant personally in order to permit him to speak or present any information to mitigate the sentence. Defendant disavowed involvement and responsibility for his actions, and he impugned the trial processes. He also made specific mention of the family's financial

---

[5](...continued)
others including Boyd's son, Dylan, at Boyd's store and home. Defendant's efforts to convert Weeks while serving in the United States military in Kosovo, and the attempted diminution of Weeks' allegiance also were considered. Accordingly, the court finds that there is clear and convincing evidence that defendant had the requisite intent as defined by § 2332b(g)(5)(B)(I), to appropriately apply the enhancement.

[6] The United States Congress has mandated the consecutive terms made reference to with respect to counts 4 and 8. The advice of the Guidelines concerning those offenses of conviction adheres to the mandatory minimum terms (not less than five years on count 4 and not less than 25 years on count 8).

circumstances when it paid money to someone in custody with whom defendant came into contact during his pretrial custody, who, it is contended, encouraged payment by defendant's family to be made in order to secure defendant's release and transport to Kosovo in avoidance of trial.[7]

In light of what was presented, the court considered the factors set forth in 18 U.S.C. § 3553, with deference to the overarching provision that it must impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing. In addition to the nature and circumstances of the offense and the history and characteristics of the defendant, the congressionally established objectives for sentencing that the court must consider under § 3553 include: promoting respect for the law; providing just punishment for the offense; affording adequate deterrence; protecting the public from further criminal activity of the defendant; providing the defendant training, medical care, and correctional treatment; and providing restitution to the victims of the offense. Restitution is not an issue in the case.

In considering the § 3553 factors, the court made an individualized assessment based on the facts presented. The court considered the parties' arguments and its own legal decision-making authority, without assuming a sentence within the Guidelines is a reasonable one. The court determined a reduced sentence outside of the Guidelines is warranted in this case, with regard to the defendant's relative youth and traumatic family background. However, a substantial sentence must be imposed.

The court's individualized assessment of this defendant, who arrived in the United States in 1999, having escaped the carnage in his homeland and avoided refugee camps, with assistance of the United States government, is a matter of record. During his return to Kosovo, defendant dedicated himself to translating jihadist propaganda for advancement of terrorist causes and personal

---

[7] This matter is the subject of address in prior orders.

5

income. Even with his limited resources, defendant sought since 2007 or early 2008, if not before, until time of arrest, to associate himself with perceived like-minded individuals intent on advancing a destructive ideology loosely cloaked on adherence to an extremist view of Islam, both here and abroad. Effort to inculcate others to exercise violence repeatedly was made. This defendant presented himself ready to take action and did act to undermine the United States military here and abroad. Defendant associated with and supported intent on the need for violence, in furtherance of the destruction of non-adherents, as described, and asserted primacy of the view that violence was justified. Beyond association and belief, this defendant acted.

Defendant plunged himself into a radicalism which subscribed to a view of Islam that has the goal of waging violent jihad against anyone perceived as being in Muslim lands unjustly, including United States military personnel and/or citizens serving or living abroad. Through his conduct and actions over a several year period, defendant evidenced his deeply seeded belief in the necessity for this, and sought to advance violence against these groups.

Reference is made more particularly to the record developed upon sentencing hearing, for matters fully considered in determination of a sentence which includes 540 months of custody. This is a sentence which the court concluded, coupled with other conditions enunciated at sentencing, is sufficient but not greater than necessary to accomplish the purposes of sentencing.

This the 18th day of January, 2012.

LOUISE W. FLANAGAN
United States District Judge