IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CR-216-FL-8

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>ZIYAD YAGHI, )<br>)<br>Defendant. ) | MEMORANDUM OPINION |

This case came before the court for sentencing January 13, 2012, upon return of guilty verdict on the two counts lodged against this defendant: 1) conspiracy to provide material support to terrorists in violation of 18 U.S.C. § 2339A; and 2) conspiracy to murder, kidnap, maim and injure persons in a foreign country in violation of 18 U.S.C. § 956(a). Lengthy presentence report by the United States Probation Officer ("officer") memorialized defendant's numerous sentencing objections.[1]

The court commenced at hearing to determine the advice of the United States Sentencing Guidelines ("Guidelines"), a tool implemented by Congress to suggest an appropriate sentence based primarily on the severity of the defendant's criminal conduct and the extent of his previous criminal history. The court may accept any undisputed portion of the presentence report as a finding of fact in establishing the Guidelines range, must decide any objection bearing on the advisory Guidelines, and has substantial discretion to impose a sentence above or below the advisory range if such a

---

[1] Defendant filed pre-hearing submission on the docket at entry number 1594 which focuses on factual and legal objections and includes a motion for downward variance.

sentence is necessary to accomplish the goals of sentencing.

To the extent defendant promoted certain factual objections, including objection that the offense conduct did not conclude in 2009, but rather in 2007, when his contact with co-defendant Daniel Boyd stopped, and that his overseas travel was for benign reasons, these objections were overruled. While there were innocent reasons for defendant's overseas travels in 2006 and 2007, this travel was undertaken also to promote his effort to become a mujahideen and fight on a battlefield, as noted in the record and discussed further below.

This defendant continued after 2007 to train including with respect to weaponry as well as heightened physical fitness. He continued close association with co-defendant Mohammad Omar Aly Hassan ("Hassan"). Defendant promoted Hassan and another young man to the attention of defendant Daniel Boyd, in subscription to violent jihad. This defendant facilitated several meetings among Daniel Boyd, Hassan, and himself, including one at Daniel Boyd's home. In 2008, defendant Yaghi facilitated introduction of defendant Jude Mohammad to Daniel Boyd. Defendants Yaghi and Hassan also presented themselves at defendant Daniel Boyd's food market, a gathering place for extremists, upon return from their trip overseas in 2007.

This defendant and defendant Hassan continued in subsequent years to promote violence through the teachings of others about perceived necessity for violent jihad. Yaghi also preached the same on at least one occasion in a Raleigh mosque. Defendant later concealed actions of Daniel Boyd in furtherance of the conspiracy. Defendant resisted effort of Elena Mohammad in 2008 to inform about defendant Daniel Boyd.[2] The evidence also showed that this defendant received

---

[2] Defendant had assumed occupancy of Mohammad's apartment and, Mohammad's mother believed, knew where her son and co-defendant had fled to overseas in furtherance of his determination to find a way to a battlefield. While
(continued...)

2

defendant Daniel Boyd while in confinement in 2009, on unrelated charges and was impressed to maintain secrecy where Daniel Boyd was afraid defendant's arrest was an effort by law enforcement to cause this defendant to turn on Boyd and provide information. There is sufficient evidence to show by a preponderance that defendant persisted in the conspiracy.

Defendant objects that he does not know Bajram Asllani. No evidence was presented that this defendant personally is acquainted with Asllani. In this respect, defendant's objection was sustained.

Other factual objection rests on summary protest of the offense conduct, not unlike that heard with respect to defendant Hassan. Defendant urges that the conduct has been taken seemingly from a government summary and that it bears no relationship to conduct proven at trial. This objection also was overruled.

Legal objections to enhancements under United States Sentencing Guidelines ("USSG") § 3A1.1(a) for intentionally selecting any victim or property because of the actual or perceived race, color, religion, national origin, or ethnicity;[3] § 3A1.2 for targeting official victims;[4] and § 3A1.4,

---

[2](...continued)
refusing her entreaty to discuss Daniel Boyd, testimony at trial supported that defendant told Elena Mohammad that she could find her son where defendant and defendant Hassan had traveled to in 2007.

[3] USSG § 3A1.1(a) provides that if the court at sentencing determines beyond a reasonable doubt that the defendant intentionally selected any victim or any property as the object of the offense of conviction "because of the actual or perceived race, color, religion, national origin, ethnicity, gender, gender identity, disability, or sexual orientation of any person," the offense level should be increased by three. The advisory notes to the guideline reference that it is meant to apply to hate crimes. There is no Fourth Circuit case on point able to be located. The United States Probation Office cites In re Terrorist Bombings of U.S. Embassies in E. Af., 552 F.3d 93 (2d Cir. 2008) for application of the enhancement. In that case, a jury convicted the defendants of many crimes, including conspiracy to murder internationally protected persons, United States officers, and employees engaging in official duties, conspiracy to destroy buildings and property of the United States, and conspiracy to use weapons of mass destruction against United States nationals and property overseas. The Second Circuit found the enhancement properly applied, noting "[t]he hate crime enhancement applies if the defendant 'intentionally selected any victim' on the basis of one of the factors listed [in § 3A1.1(a)] and, because there can be no 'good reasons' for doing so, the underlying motivation of [defendants] is simply beside the point." 552 F.3d at 93. A court in the Southern District of New York also applied the enhancement. See
(continued...)

the terrorism enhancement[5] (a significant driver of the Guidelines' advice), vigorously were argued.

---

[3](...continued)
United States v. Cromitie, 2011 WL 2693293, *7 (S.D.N.Y. 2011) (applying enhancement after jury convicted defendants of conspiring to bomb synagogue). Both In re Terrorist Bombings and Cromitie have very different facts from those at issue in this case, however. Nonetheless, the application is properly applied where this defendant and the other defendants intentionally selected victims beyond a reasonable doubt based on religion, national origin, and/or ethnicity. Defendants, including this one, conspired to commit terrorist acts aimed at the "kuffar," or non-Muslims, and focused substantial effort in planning. For reasons noted on the record, the court overruled his objection.

[4] Defendant notes that at trial, the government offered no evidence that he conspired to injure a government officer or employee. USSG § 3A1.2 provides that a three level enhancement should be applied if the victim was a government officer or employee and the offense of conviction was motivated by such status. As to this defendant, for reasons noted on the record, the court determined this enhancement was not properly applied, and sustained the objection, also as to defendant Hassan.

[5] USSG § 3A1.4 provides that "if the offense is a felony that involved, or was intended to promote, a federal crime of terrorism, increase by 12 levels; but if the resulting offense level is less than level 32, increase to level 32." § 3A1.4(a). Subsection (b) provides that in every such case the defendant's criminal history shall be a category VI. The application notes to § 3A1.4 reference the definition of "federal crime of terrorism" as provided in 18 U.S.C. § 2332b(g)(5). That statute defines "federal crime of terrorism" as an offense that

> (A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and
>
> (B) is a violation of [providing list of statutes, including § 956(a) (conspiracy to murder, kidnap, or maim persons abroad) and § 2339A (providing material support to terrorists)].

§ 2332b(g)(5)(B)(I).

The case of United States v. Chandia, 395 F. App'x 53 (4th Cir. 2010) (per curiam) was thoughtfully argued by both sides. Chandia is instructive for its emphasis on the necessity for specific findings to be made when this enhancement is considered. It is noted that other courts have declined to apply it. See United States v. Khan, 461 F.3d 477 (4th Cir. 2006) (revealing that the "district court chose to sentence [one defendant] well below the range recommended by the sentencing guidelines" but including no discussion at all about the terrorism enhancement or its application); United States v. Stewart, 590 F.3d 93, 138 (2d Cir. 2009) (quoting Chandia and noting that failure to apply the enhancement was not error when the government showed no facts supporting the specific intent necessary for the enhancement). Unlike in Chandia, specific facts are urged by the officer to be considered in this case upon which the officer contends the enhancement is warranted. Defendant sought out defendant Daniel Boyd at the local mosque to learn more about Daniel Boyd's time in Afghanistan and presumably to learn more about traveling abroad to commit violent jihad. Defendant and Hassan went to Boyd's home and engaged in conversations that Daniel Boyd described as being about the "corrupt ideology." In May 2007, defendant and Hassan drove Daniel Boyd to a bookstore and while in the car, showed Daniel Boyd a gun hidden in the console of the car that defendants indicated they used for target practice and training. Defendant traveled to Jordan in October 2006. The purpose of the trip (which he disputes) appears to have been to wage violent jihad. Daniel Boyd testified that he attended defendant's going away party for this trip which appeared more like a sending off to fight celebration. Defendant again traveled to Jordan with defendant Hassan in 2007, to engage in violent jihad. Both were turned away from Israel. While on this trip, they attempted to contact Daniel Boyd but were unsuccessful. Both dispute the purpose of this trip, though Daniel Boyd testified that he

(continued...)

Defendant, together with defendant Hassan, argue they are entitled to a reduction for being a minimal participant. Both objections were overruled. USSG § 3B1.2(a) provides for a 4-level decrease in the offense level where "the defendant was a minimal participant in any criminal activity." The section is to be applied only for a defendant "who plays a part in committing the offense that makes him substantially less culpable than the average participant." Id., app. n. 3(A) (emphasis added). The application notes further explain that a "minimal participant" contemplates:

> Defendants who are plainly among the least culpable of those involved in the conduct of a group . . . defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant. It is intended that the downward adjustment for a minimal participant will be used infrequently.

Id., app. n.4 (emphasis added).

The Fourth Circuit has held that application of § 3B1.2 is a function of a defendant's culpability. United States v. White, 875 F.2d 427, 434 (4th Cir. 1989). In determining whether a defendant is entitled to a minimal participant reduction, the court must consider the defendant's conduct relative to the conduct of others involved in the same criminal activity as well as his conduct relative to the elements of conviction. United States v. Akinkoye, 185 F.3d 192, 202 (4th Cir. 1999). In considering the defendant's conduct relative to the elements of conviction, a court must decide

---

[5](...continued)
understood the two were trying to get to a battlefield. Boyd specifically testified that when defendant and Hassan said they were going to "get married" he took that to mean they were trying to find a battlefront or front line somewhere. Yaghi's Facebook page includes various communications that evidence his intent to wage violent jihad and acceptance of radical Islam. Defendant and other co-defendants shared various forms of media including books, literature, and videos espousing violent jihad and the teaching of scholars who supported violent jihad. Defendant built a relationship with co-defendant Hassan, based on their shared view of Islam, including the goal of waging violent jihad in various parts of the world. This defendant advanced jihadist propaganda and created and disseminated its rhetoric on the Internet through raps and other postings. Upon these and other findings made at hearing, over defendant's objection, the court found that clear and convincing evidence existed of defendant's intent, as defined in § 2332b(g)(5)(B)(I), and the enhancement properly was applied.

whether the defendant's conduct is material or essential to committing the offense. Id.

The defendant bears the burden of demonstrating by a preponderance of the evidence his entitlement to an offense level reduction. United States v. Pratt, 239 F.3d 640, 645 (4th Cir. 2001); United States v. Gordon, 895 F.2d 932, 935 (4th Cir. 1990). Defendant cannot satisfy this burden. He has not demonstrated by a preponderance of the evidence that his culpability is of a lesser degree to warrant a reduction, as reflected in the record. The issue is whether this defendant is less culpable when one looks at his conduct relative to the elements of the offenses of conviction. Akinkoye, 185 F.3d at 202. The defendant participated in conduct meeting the requirements of the offenses of conviction. A minimal role reduction is not warranted.

For these and other reasons, over the objections of defendant, the court concluded that the officer correctly determined the advice of the Guidelines to be fifteen (15) years on count 1 and life on count 2. The court allowed the parties opportunity to argue for whatever sentence they deemed appropriate. The government advocated for a sentence of a minimum of 360 months. Also as noted on the record, defendant's argument advanced propriety of a downward variance. That motion found favor with the court.

In mitigation, reference was made to defendant's family relationships, particularly his rejection by his father and the alleged abuses witnessed by him undertaken by his father against his mother, his relative youth, and susceptibility to overture of defendant Daniel Boyd. Counsel ably argued on defendant's behalf at hearing and in his pre-hearing written submission. In furtherance of the court's determination of the sentence, letters received by the court in support of defendant also were reviewed.

The court addressed the defendant personally in order to permit him to speak or present any information to mitigate the sentence. Defendant impugned the legal processes applied in the case,

renewed his claim of innocence, and questioned the court's authority to pronounce judgment.

The court considered the factors set forth in 18 U.S.C. § 3553, with deference to the overarching provision that it must impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing. In addition to the nature and circumstances of the offense and the history and characteristics of the defendant, established objectives for sentencing that the court must consider under § 3553 include: promoting respect for the law; providing just punishment for the offense; affording adequate deterrence; protecting the public from further criminal activity of the defendant; providing the defendant training, medical care, and correctional treatment; and providing restitution to the victims of the offense. Restitution is not an issue in the case.

In considering the § 3553 factors, the court made an individualized assessment based on the facts presented. The court considered the parties' arguments and its own legal decision-making authority, without assuming a sentence within the Guidelines is a reasonable one. The court's assessment of this defendant reflected on his involvement in the offenses of conviction, and the serious nature of the crimes. His established criminal history was considered, where defendant, now 24, began at the age of 16, to engage in criminal conduct.

His escalating contact with the state criminal justice system began first with his having no driver's license and giving fictitious information to an officer, then moved to felonious restraint, where he and defendant Hassan, and another kidnaped and restrained a college student. Other serious crimes were lodged against him in Austin, Texas, where defendant briefly resided with his father. Charges there from June 2006 remain pending, where defendant was charged with burglary of a building, criminal mischief, engaging in organized criminal activity, and possession of marijuana. Without regard to the terrorist enhancement, defendant's scoreable criminal history merited under the Guidelines his classification as a mid-range offender, in history category III.

Defendant's propensities evidence disregard for liberty and property rights of others, and this defendant's ready resort to force.

With his limited resources, defendant advanced himself overseas twice with intent to make his way onto a battlefield. He unsuccessfully sought in his second trip, taken in 2007, with a like-minded co-conspirator, aided in logistical component by Daniel Boyd, the direct mentoring of Daniel Boyd while overseas. While unable to make this contact, and enter into Israel, this defendant and Hassan still sought, apparently unsuccessfully, for a battlefield on which to enter. Yaghi's association here and abroad with individuals intent on advancing a destructive ideology, cloaked in adherence to an extremist view of Islam, which propagated violence against anyone perceived as being in Muslim lands unjustly, coupled with his demonstrated disregard for the law, underscore this defendant's dangerousness. Defendant was ready, willing, and did so act to further violence. These propensities were not dispensed with after his return from overseas, either.

Defendant plunged himself for several years into radicalism, fanned for a time by Daniel Boyd, which was endorsed by Hassan and others. Escalating violent tendencies are observed over the pertinent period. His background, and the actions and conduct of the defendant warrant substantial sentence in deference to the need to promote respect for the law, deter this type of conduct, and protect the public. Reference is made more particularly to the record developed upon sentencing hearing, for all of the matters considered in determination that defendant be imprisoned for a term of 180 months on count 1 concurrent with a term of 380 months on count 2, which sentence, which varies below a Guideline sentence, coupled with other conditions enunciated at sentencing, accomplishes the purposes of sentencing.

This the 18th day of January, 2012.

LOUISE W. FLANAGAN
United States District Judge